IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MINUSHA KURAKULA, VENKATA MADHUSUJITHA KAMISETTY, AKKAYYA CHAVALA, VANDANA RAJSHEKHAR RAO SURAPREDDY, GAURI RAJENDRA JAGTAP, VIDYA DURAI RAJ, SRILAKSHMI GOUD NANDUTI, GAYATHRI ELAVARASAN, JERLINE SOPHIA LEO INFANT RAJ, TANVEE TEJALBHAI SHAH, SMITHA LNU, LUBNA KHALEELI, SUMITHA KOMMAREDDY, NAVEENAJANCY KASI BALASAMY, AKITA BASANT, BALAJI VIJAYAKUMAR, MEENAKSHI KAUR GURPREET MATHARU, VISWANATH VENKATA NARASIMHA NITTALA, KENA BHARATBHAI PATEL, SARANYA SUDANTHIRA KUMAR, VEENA SANDRA, GEETHA GOVINDAM, SNEHA DOMMETY, SANDHYA VANAMA, AARADHI TILVA, BABYNAVEENA MUDDANA, SHIPRA SHARMA, BHAVANI NARRA, SIMI TRESA ANTHONY, SUDHA RANI CHAGALA, REEMA MENON, SWATI SANAPALA, YAMINI KODALI, HARITHA KUMARI RAJULA, MANEET KAUR BRAR, ANKITA KANUNGO, MADHURI KOTTE, ANU MANNILA MATHEW, SWETA PRASAD, RAJESH GANGINENI, and SUMALATHA TINKALA, <br><br>           Plaintiffs, <br><br>   v. | 4:20CV3131 <br><br> MEMORANDUM AND ORDER |

| | |
|---|---|
| TRACY RENAUD,[1] Senior Official Performing the Duties of the Director, U.S. Citizenship and Immigration Services,<br><br>                  Defendant. | |

This matter is before the Court on plaintiffs' Motions for Preliminary Injunction (Filing Nos. 7 and 16).[2] Plaintiffs bring a claim for unreasonable delay under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, alleging the USCIS has, in bad faith, slowed down the adjudications for H-4 visa renewals and corresponding employment authorization documents ("EADs"). Plaintiffs seek an injunction ordering the USCIS to stop "intentionally delaying adjudications of H4 and H4 EADs" and to make a "final determination of the plaintiffs' application[s] within seven (7) days" of the Court's order (Filing No. 7-7). For the reasons stated below, the Court denies plaintiffs' motion for preliminary injunction.

## I. BACKGROUND

### A. Procedural Background

On January 5, 2021, the Court held a virtual hearing with the parties to discuss Renaud's combined motion to sever and transfer, motion to dismiss moot claims, and motion to dismiss for failure to state a claim (Filing No. 17). The Court issued an order (Filing No. 38) severing the plaintiffs' claims and transferring some of them to the judicial districts where their H-4 and EAD applications are pending. At that time, the Court also dismissed, with the parties' consent, the claims of those plaintiffs whose H-4 and EADs

---

[1]On January 20, 2021, Tracy Renaud ("Renaud") replaced Kenneth T. Cuccinelli as the Senior Official Performing the Duties of the Director of United States Citizenship and Immigration Services ("USCIS").

[2]Plaintiffs filed a second motion for preliminary injunction after filing a second Amended Complaint (Filing No. 13), adding new plaintiffs, because defendant noted they would not agree to having the first motion for preliminary injunction apply to the new plaintiffs listed in the second amended complaint. The first and second motions for preliminary injunction are substantively identical, and the Court will construe them as one.

were previously adjudicated. Only those plaintiffs whose H-4 and EAD renewal applications are pending at the Nebraska immigration service center remain.

The Court held an in-person hearing on January 7, 2021, on plaintiffs' motion for preliminary injunction. On January 12, 2021, plaintiffs voluntarily dismissed count one of their second amended complaint (Filing No. 34). This action mooted Renaud's motion to dismiss for failure to state a claim and plaintiffs' motion for preliminary injunction as to count one. Thus, the only remaining claim at issue for the purposes of this preliminary-injunction request is count two of the complaint, alleging unreasonable delay under the APA.

      B.      **Regulatory Background**

Plaintiffs are 38 individuals who are the spouses and children of H-1B visa holders ("H-1B"). H-1Bs are temporary, skilled workers who perform services for United States employers in specialty occupations. 8 U.S.C. § 1101(a)(15)(H)(i)(b). As dependents of the primary H-1B, their spouses and children can obtain nonimmigrant status as H-4 visa holders ("H-4") by filing a Form I-539 and are permitted to remain in the United States "for the same period of admission or extension as the principal spouse or parent." 8 C.F.R. § 214.2(h)(9)(iv). Generally, H-4s are not permitted to work while living in the United States; however, if the primary H-1B has shown an intent to stay in the United States by applying for permanent resident status, the H-4 may apply for work authorization by filing a Form I-765. 8 C.F.R. § 247a.13. If an H-4 qualifies for employment authorization, they are issued EADs.

H-1B visas are generally issued for three years, but the H1-B's employer may apply for extensions six months before the current H-1B visa expires. 8 U.S.C. § 1184(g)(4); 8 C.F.R. § 214.2(h)(15)(ii)(B). Because the H-4's visa renewal depends upon the status of the H-1B, 8 C.F.R. § 214.2(h)(9)(iv), the earliest an H-4 may apply for an extension is also six months in advance. If the H-1B's visa expires while a renewal application is pending adjudication, their work authorization is automatically extended under 8 C.F.R.

§ 274a.12(b)(20) for a maximum of 240 days. A H-4 with an EAD, however, is not afforded the same automatic extension for employment authorization. *See* 80 Fed Reg. 10, 298-99. Before March 2019, this was not of great concern because the H-4, EAD, and H-1B renewals were processed concurrently, often on an expedited basis. Gaps in employment for H-4s with EADs were rare.

In March 2019, USCIS began processing H-1B and H-4 applications for renewal sequentially. USCIS also began requiring all applicants filing a Form I-539, including those applying for H-4 extensions, to appear at an application service center ("ASC") to provide biometric information. 8 C.F.R. § 103.2(b)(9). While this additional step may have, in some circumstances, increased H-4 application processing times, the COVID-19 pandemic seemed to exacerbate adjudicatory delays. Due to the pandemic, all ASCs were closed for in-person services from March 18, 2020, to mid-July. No H-4s could get an appointment to complete biometrics during that time. Although the ASCs began to partially reopen in July, appointments were still limited. These temporary ASC closures and limited re-openings created a backlog for those who needed a new set of biometrics to renew their H-4 visas and EADs. Consequently, many H-4s are experiencing gaps in employment authorization while their applications are pending adjudication.

The plaintiffs here are seeking the renewal of their H-4 or H-4 EAD status. Their applications are pending at the Nebraska service center in Lincoln, Nebraska. They allege the USCIS is improperly delaying the processing of their H-4 visa renewals and corresponding EAD extensions. The Court notes it is not the first to decide the issue of unreasonable delay of these applications on a motion for preliminary injunction; plaintiffs' counsel has filed nearly identical claims in numerous federal courts around the country.[3]

---

[3]*See Verma v. U.S. Citizenship & Immigr. Servs.*, No. CV 20-3419 (RDM), 2020 WL 7495286, at *6 (D.D.C. Dec. 18, 2020); *Ray v. Cuccinelli*, No. 20-CV-06279-JSC, 2020 WL 6462398, at *2 (N.D. Cal. Nov. 3, 2020); *Muvvala v. Wolf*, No. 1:20-CV-02423 (CJN), 2020 WL 5748104, at *3 (D.D.C. Sept. 25, 2020); *Kolluri, et al. v. U.S. Citizenship & Immigr. Servs.*, 2021 WL 183316, at *5 (Jan. 17, 2021).

C.  **Objections to Plaintiffs' Proposed Exhibits**

As a preliminary matter, the Court will briefly address Renaud's Objections to Plaintiffs' Exhibit Nos. 20-24 (Filing No. 39). At the hearing on January 7, the Court sustained Renaud's objections to plaintiffs' Exhibits Nos. 8, 9, 10, 11, and 15, but the Court gave plaintiffs permission to revise and resubmit these exhibits by January 12, 2012.[4] On that day, plaintiffs filed proposed Exhibit Nos. 20-24 (Filing Nos. 35-2, 35-3, 35-4, 35-5, and 35-6). To accompany proposed Exhibit Nos. 20, 21, 22, and 23, plaintiffs produced a declaration by one of plaintiffs' counsel, Steven Brown ("Brown"), to provide foundation. Renaud reviewed these documents before plaintiffs filed them but still had "multiple objections" for the Court to address.

Renaud objects to paragraphs 3, 5, and 6 of Brown's declaration "as lacking in foundation and improper characterization," but does not provide any further detail. In light of the information contained in paragraph 6, Brown has established foundation for paragraphs 3 and 5, and the information presented here is not improperly characterized. Fed. R. Evid. 403. The Court overrules these objections. Next, Renaud objects to proposed Exhibits 20, 21, 22, and 23 "on the basis of relevance" but withdraws its objections as to foundation. After careful review, the Court finds these exhibits are relevant to plaintiffs' motion for preliminary injunction. Fed. R. Evid. 401. The court will determine their weight in light of all the evidence. Renaud states no further objections. Renaud's objections to Exhibits 20, 21, 22, 23, and 24 are overruled and the exhibits are admitted.

II.  **DISCUSSION**

A.  **Standard of Review**

---

[4]The Court gave plaintiffs permission to resubmit the exhibits in light of its decision to sever and transfer some of plaintiffs' claims to the districts where their H-4 and H-4 EAD applications are pending. At the time of the hearing, the exhibits contained information relating to all of the service centers, but the only claims remaining in this Court are those whose applications are being processed at the Nebraska service center. Therefore, the Court gave plaintiffs permission to modify the exhibits to reflect only information pertinent to the Nebraska service center.

A "'preliminary injunction is an extraordinary remedy,' and the 'party seeking injunctive relief bears the burden of proving' that the relevant factors 'weigh in its favor.'" *MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1015 (8th Cir. 2020) (quoting *Mgmt. Registry, Inc. v. A.W. Cos.*, 920 F.3d 1181, 1183 (8th Cir. 2019)). In deciding a preliminary injunction, the Court weighs four factors set out in *Dataphase Systems, Inc. v. C L Systems, Inc.*: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." 640 F.2d 109, 113 (8th Cir. 1981) (en banc). Although no single factor is necessarily determinative, the "likelihood of success on the merits is the most significant factor," *Laclede Gas Co. v. St. Charles County.*, 713 F.3d 413, 419 (8th Cir. 2013), and "the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied." *CDI Energy Servs. v. W. River Pumps, Inc.*, 567 F.3d 398, 402 (8th Cir. 2009).

### B. Unreasonable Delay Under the APA

Plaintiffs argue the USCIS has, in bad faith, unreasonably delayed the adjudication of their H-4 and EAD renewal applications. The APA requires an agency to "conclude a matter presented to it 'within a reasonable time,'" *Irshad v. Johnson*, 754 F.3D 604, 607 (8th Cir. 2014) (quoting 5 U.S.C. § 555(b)), and the Court may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). To evaluate the unreasonableness of a delay under the APA, Courts often analyze six factors set forth in *Telecommunications Research & Action Center v. FCC* ("TRAC factors"):

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the

6

nature and extent of the interests prejudiced by the delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that bench action is unreasonably delayed.

750 F.2d 70, 80 (D.C. Cir. 1984); *Irshad*, 754 F.3d at 607. To show a likelihood of success on the merits, the plaintiffs must show the balance of the TRAC factors weigh in their favor. *MPAY Inc.*, 970 F.3d at 1015.

### i. Rule of Reason and Timeliness

The first two TRAC factors, rule of reason and timeliness, relate to the USCIS's adjudicatory process and whether the agency is following a timetable set out by Congress. Renaud argues the USCIS follows a "first-in, first-out" process when adjudicating H-4 and EAD renewals, with limited exceptions for certain applicants who qualify for expedited review. Plaintiffs argue, and have some data to support, that not every application processed at the Nebraska service center is adjudicated in strict chronological order. Of course, those applications approved for expedited review are processed out of order. USCIS will also not adjudicate an application until all components, including the biometric requirements, are complete.[5] These factors appear to account for the small fraction of H-4 and EAD renewal applications that are not adjudicated chronologically.

Nonetheless, these slight variations are inadequate to establish the USCIS does not follow a first-in, first-out process. The Court agrees with those federal courts that have found the USCIS—including the Nebraska service center—generally adjudicates H-4 and EAD renewal applications on a "first-in, first-out" basis. *See Ray v. Cuccinelli*, 2020 WL 6462398, at *2; *Kolluri, et al.*, 2021 WL 183316, at *4-5. This process constitutes a "rule of reason" under the first TRAC factor. *See Ray,* 2020 WL 6442398, at *9; *Kolluri,* 2021 WL 183316, at *5 (noting that "nearly 10% of the delays" were adjudicated out of order,

---

[5]As discussed above, the ASCs closed from late March until mid-July and continue to operate at limited capacities. The shortage of available biometric appointments, as Renaud argues, is a contributing factor to the backlog and variations in processing order.

but that is "insufficient to establish that the USCIS does not apply a first-in, first-out rule of reason.").

As to the second TRAC factor, plaintiffs argue Congress intended the H-4 applications to be adjudicated within 30 days, or at a maximum, 180 days, after filing for renewal. 8 U.S.C. § 1571(b). In pertinent part, § 1571(b) states

> It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days . . . except that a petition for a nonimmigrant visa under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition.

*Id.* Plaintiffs argue this statement, coupled with the regulations providing that an H-4 may not apply for renewal until 180 days before expiration, *see* 8 C.F.R. § 274a.13(a), proves Congress and the USCIS set a firm outer limit of 180 days for adjudicating H-4 and EAD renewals. *See Nibber v. U.S. Citizenship & Immigr. Servs.*, No. CV 20-3207 (BAH), 2020 WL 7360215, at *6 (D.D.C. Dec. 15, 2020) ("Section 1571(b) clearly envisions that USCIS will adjudicate all covered applications for immigration benefits, including Form I-539 and Form I-765 applications . . . within six months of filing."). Accordingly, plaintiffs state "[a]ny delay beyond 180 days should be presumptively, and *per se* unreasonable." But the Court will not transform a precatory guideline into a mandatory deadline. *See Kolluri*, 2021 WL 183316, at *5 (noting that finding a delay beyond 180 days *per se* unreasonable would "transmogrify an aspiration into a deadline") (quoting *Chuttani v. United States Citizenship & Immigr. Servs.*, No. 3:19-CV-02955-X, 2020 WL 7225995, at *3 (N.D. Tex. Dec. 8, 2020)).

According to the historical data the plaintiffs provided to the Court, fewer than five percent of H-4 and EAD applications processed at the Nebraska service center exceeded the 180-day "threshold." Even if processing times exceeding 180 days might be considered unreasonable in some circumstances, on this record, some slower adjudications are not unreasonable in light of the closures of the ASC sites, adjusting to the implementation of the new biometrics requirement, and working through the backlog of cases caused by the

8

ongoing COVID-19 pandemic. *See Ray*, 2020 WL 6442398, at *8 (noting such delays are reasonable under these circumstances and presumably will "lessen as [USCIS] has more experience implementing the [biometrics] requirement and catches up from the back log created by the pause imposed by the pandemic"). Therefore, the second TRAC factor also weighs in favor of Renaud.

### ii.     Human Health and Prejudice

The third and fifth TRAC factors, which are often analyzed together, *id.* at *9, undoubtedly weigh in favor of plaintiffs. If a plaintiff's EAD expires, they lose their ability to work and cannot renew their driver's license. Losing one's driver's license during a pandemic could be especially burdensome. *See, e.g.*, *Nibber*, 2020 WL 7360215, at *6 ("If a member of plaintiff's family, or plaintiff herself, were to require medical care during this public health emergency, plaintiff would be unable to lawfully drive that person to a doctor's office or hospital, and could be unable to procure necessary supplies for her family."). In addition to the emotional strain that accompanies job loss, many plaintiffs will face severe financial hardship, have difficulties paying bills and providing care for their children, and may lose health-insurance coverage. *See Yea Ji Sea v. DHS*, No. CV-18-6267-MWF (ASX), 2018 WL 6177236, at *6 (C.D. Cal. Aug. 15, 2018) (finding the loss of employment and the ability to drive tipped the balance of the third and fifth TRAC factors in the plaintiff's favor). These consequences clearly illustrate the third and fifth TRAC factors favor plaintiffs.

### iii.    Effect of Expedited Adjudication

The fourth TRAC factor requires the Court to analyze what effect, if any, expedited adjudication would have on "agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. Because the USCIS processes applications on a first-in, first-out basis, Renaud argues expediting plaintiffs' applications would simply "move[] all others back one space and produce no net gain." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003); *see also Xu v. Nielsen*, No. 18 Civ. 2048 (BMC), 2018 WL 2451202, at *2 (E.D.N.Y. May 31, 2018) ("There are many other applicants who

9

have waited even longer than plaintiff; to grant him priority is to push them further back in line when the only difference between them is that plaintiff has brought a federal lawsuit.").

Plaintiffs counter that the agency will not be prejudiced by an order to expedite their claims because "the Agency takes 12 minutes at most to make a work authorization decision." *See* 84 Fed. Reg. 62280, 62292. Although the adjudication of H-4 and EAD renewal applications can be adjudicated rather quickly in comparison to the application at issue in *Mashpee*, granting the relief sought would only "impose offsetting burdens on equally worthy applicants." *Ray*, 2020 WL 6462398, at *10.

Plaintiffs further argued at the preliminary injunction hearing that ordering the Nebraska service center to adjudicate these claims within seven days from the Court's order would not displace other applications in the queue. More specifically, plaintiffs maintained the USCIS does not process applications based on a first-in, first-out basis, and so there is no theoretical "line" they would be cutting. This argument is not convincing in light of the agency's well-established first-in, first-out process. *Id.*; *Kolluri,* 2021 WL 183316, at *5. On balance, granting plaintiffs' requested relief would harm other applicants, and so this factor weighs against injunctive relief.

### iv. Bad Faith

The sixth TRAC factor "assess[es] the 'bad faith' of the agency's decisions." *Kolluri*, 2021 WL 183316, at *6. To find Renaud acted in bad faith, plaintiffs must provide evidence "of bad faith or impropriety driving the delay in adjudication." *Dehrizi v. Johnson*, No. CV-15-00008-PHX-ESW, 2016 WL 270212, at *7 (D. Ariz. Jan. 21, 2016). Plaintiffs argue USCIS's decisions to (1) adjudicate the H-1B and H-4 applications sequentially and (2) to require H-4 applicants to submit biometric data constitute bad faith.

Plaintiffs argue theses agency changes occurred as part of an overall effort to slow down these adjudications and make immigration more burdensome. In support, plaintiffs cite a report published by the Immigration Reform Law Institute ("IRLI") (Filing No. 5-7),

10

an immigration lobbying group, that advocated for these two changes to the H-4 and EAD application processes (among many other immigration policy changes). While plaintiffs claim members of the USCIS met with IRLI, and the changes to the adjudicatory process changed shortly thereafter, plaintiffs' "evidence of bad faith" falls short. Indeed, plaintiffs concede there is only "smoke" on this issue and state a need for further discovery. Given the scant and largely unsupported circumstantial evidence plaintiffs present, the Court finds they did not bear their burden to establish bad faith and, the sixth TRAC factor is, *at best*, neutral.

On balance, the majority of the TRAC factors weigh in favor of Renaud and the USCIS. Because plaintiffs have not shown a likelihood of success on the merits, the Court denies plaintiffs' motion for preliminary injunction. *See CDI Energy Servs.* 567 F.3d at 402.

IT IS SO ORDERED.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge